**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **JEFFREY J. IBACH,** | ) |
| Plaintiff, | ) Case No. EDCV 15-2647-AJW |
| v. | ) |
| **CAROLYN W. COLVIN,** | ) **MEMORANDUM OF DECISION** |
| **Acting Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [See JS 2]. In an April 23, 2014 written hearing decision that constitutes the Commissioner's final decision in this matter, the Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. Based on this RFC, the ALJ determined that plaintiff could not perform his past relevant work, but that he could perform alternative work available in significant numbers in the national economy.

1  Specifically, the ALJ found that plaintiff could perform the following jobs listed in the Dictionary of
2  Occupational Titles ("DOT"): cashier (DOT code 211.462-010), storage facility clerk (DOT code 295.367-
3  026), and office helper (DOT code 239.567.101). [Administrative Record ("AR") 26-28]. Accordingly, the
4  ALJ found plaintiff not disabled at any time from April 20, 2011, his alleged onset date, through the date
5  of the ALJ's decision. [AR 28].

**Standard of Review**

7  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
8  evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas
9  v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla,
10 but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such
11 relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v.
12 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to
13 review the record as a whole and to consider evidence detracting from the decision as well as evidence
14 supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel,
15 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational
16 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas v.
17 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
18 599 (9th Cir. 1999)).

**Discussion**

20 Plaintiff contends that the ALJ impermissibly relied on testimony from the vocational expert ("VE")
21 that deviated from the DOT without adequate explanation, and therefore that the ALJ erred at step five of
22 the sequential evaluation procedure. According to plaintiff, the three alternative DOT jobs identified by the
23 ALJ do not conform to the RFC limitations permitting plaintiff to be off-task up to 10% of the workday,
24 and precluding him from performing work above the shoulder with his dominant right arm. [JS 6-8].
25 Plaintiff also contends that he cannot perform the job of office helper because he cannot stand or walk for
26 more than twenty to thirty minutes at a time, and he cannot work as a storage facility clerk because he is
27 prohibited from performing work requiring hypervigilance. [JS 9].
28 At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing,

through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform his past work or other jobs that exist in substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). "Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

The ALJ must pose hypothetical questions that set out all of the claimant's impairments for the VE to consider, and then the VE "translates these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the VE must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886; Tackett, 180 F.3d at 1101. The ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock, 240 F.3d at 1164-1165). In order to support a finding that the claimant can perform jobs in the national economy, any hypothetical question posed to a VE must reflect all of the claimant's limitations. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

After consideration of all the evidence, ALJ determined that plaintiff retained the RFC

> to perform light work as defined in 20 CFR [§] 404.1567(b) except he could stand and/or walk for a total of six hours out of an eight-hour workday, but for no more than 20 to 30 minutes at a time; he could sit for six hours out of an eight-hour workday, with brief position changes after approximately one hour; he could occasionally bend, stoop, climb steps, and balance; he could not kneel, crawl, squat, or crouch; he could not climb ladders, ropes or scaffolds; he could not work at unprotected heights, around moving machinery or other hazards; he could not do above-the-shoulder work with the right dominant arm; he could not do repetitive or constant pushing or pulling with the lower extremities, such as operating foot pedals; he could not do fast-paced or assembly line type of work; he could not do work

>requiring hypervigilance or intense concentration on a particular task, meaning that jobs should be precluded if the very nature of the job would be such that an individual could not be off-task for the shortest amount of time, like watching a surveillance monitor or where safety might be an issue; and he would likely be off-task up to 10% of the workday or workweek due to chronic pain or side effects of medications.

[AR 21-22].

At the hearing, the ALJ asked the VE if a hypothetical person of plaintiff's age, education, work experience, and RFC could perform any work currently available in the national economy. [AR 53-54]. The ALJ omitted the off-task restriction in her first iteration of the hypothetical. [AR 53-54]. The VE identified three light work occupations that such a hypothetical person could perform: cashier, storage facility clerk, and office helper. The VE noted that there would be approximately a 50% job erosion in the cashier job to permit adjustments in position every twenty to thirty minutes, but that there were still sufficient jobs available in the national economy. [AR 54-55].

The ALJ then added to her hypothetical the restriction of being off-task up to 10% of the workday. [AR 55]. The VE testified that even with this additional constraint, there would be no erosion in the numbers of jobs available. [AR 55]. The ALJ modified the hypothetical to include the restriction of being off-task up to 20% of the day. [AR 55]. The VE testified that employment would be precluded for a person who was off-task as much as 20% of the day. [AR 55]. Finally, the ALJ asked if the VE's testimony was consistent with the DOT, and the VE said that it was. [AR 56].

ALJs routinely rely on the DOT "in evaluating whether [plaintiff] is able to perform other work in the national economy." Terry v. Sullivan, 903. F.2d 1273, 1276 (9th Cir. 1990); see Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles."). Should an obvious or apparent conflict arise between a claimant's RFC and the DOT occupation description, the ALJ must ask the VE to reconcile the conflict. Gutierrez v. Colvin, 844 F. 3d 804, 807 (9th Cir. 2016); see Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (holding that the ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and that while the DOT does not

"automatically trump" conflicting expert testimony, the ALJ must "obtain a reasonable explanation for any apparent conflict"); see also Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency. The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination. The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence.") (internal quotation marks omitted) (citing Massachi, 486 F.3d at 1153-1154).

"[I]t's important to keep in mind that the [DOT] refers to 'occupations' and not specific jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" Gutierrez, 844 F. 3d at 807 (quoting SSR 00-4P, 2000 WL 1898704 at *2-3). The "maximum requirements" of an occupation are not present in every job within that occupation, and "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Gutierrez, 844 F. 3d at 808. The ALJ need only ask follow-up questions to clarify conflicts that are "obviously or apparently contrary to the [DOT], but the obligation doesn't extent to unlikely situations or circumstances." Gutierrez, 844 F. 3d at 808. When the VE testifies about job requirements not addressed in the DOT, that testimony augments the DOT. "[T]o hold otherwise would mean that VEs always create conflicts with the DOT whenever they mention any of the multitude of things about a job not expressly addressed in the DOT." Laufenberg v. Colvin, 2016 WL 6989756, at *9 (C.D. Cal. Nov. 29, 2016).

When the VE identified cashier, storage facility clerk, and office helper as occupations that are consistent with plaintiff's functional limitations, the "essential, integral or expected" functions of those jobs did not appear to conflict with the limitation that plaintiff would be off-task for 10% of the workday, both because there is no statement in the DOT about time spent off-task, and because none of those occupations require consistent, focused attention to detail. In the absence of an apparent conflict, ALJ did not need to obtain further clarification from the VE. See Gutierrez, 844 F. 3d at 808 ("For a difference between a [VE's]

testimony and the [DOT] to be fairly characterized as a conflict, it must be obvious or apparent."). Nonetheless, the ALJ did continue her inquiry. Specifically, the ALJ asked the VE whether a hypothetical person with plaintiff's RFC, including the limitation of being off-task 10% of the workday, could perform the jobs of cashier, storage facility clerk, or office helper. The VE stated that he could. [AR 55]. The VE clearly considered the extent to which someone could be off-task and still perform those DOT jobs, because she later opined that being off-task for 20% of the workday would preclude employment. [AR 55]. Accordingly, the ALJ met her burden by specifically asking the VE to consider at what point being off-task would preclude employment. The VE's testimony resolved any conflict with the DOT in this regard, and the ALJ was entitled to rely on that testimony. See Bayliss, 427 F. 3d at 1218 ("[A] VE's recognized expertise provides the necessary foundation for his testimony. Thus, no additional foundation is required."); see also Arellano v. Colvin, 2016 WL 3031770 at *6 (C.D. Cal. May 25, 2016) (finding no apparent conflict between the DOT and the VE's testimony that being off-task up to 10% of the workday did not preclude performance of the DOT jobs of cashier, storage facility clerk, or office helper).

  Plaintiff argues that the VE did not address his need to change positions after twenty to thirty minutes of walking or standing in reference to the office helper job. However, the VE demonstrated that she was aware of the restriction and took it into account when she noted that the positional limitation would erode the occupational base for the cashier job but not for the office helper and storage facility clerk jobs. [AR 54-55]. Moreover, there is no obvious or apparent conflict between that positional limitation and the essential, integral or expected functions of the familiar job of office helper. An office helper may prepare and distribute mail and messages, distribute files and paperwork throughout the office, use office equipment and make deliveries, but nothing in the definition suggests that the job requires an employee to stand or walk for more than twenty to thirty minutes at a time. [DOT code 239.567-010]. "The DOT lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704 at *3; see Gutierrez, 844 F. 3d at 807. With respect to positional limitations, the VE's testimony did not conflict with the DOT, and the ALJ was permitted to rely on it.

  Plaintiff next contends that each of the three jobs the VE identified requires frequent reaching, and that frequent above-the-shoulder reaching with the right upper extremity is precluded by plaintiff's RFC.

6

[JS 10]. A job that demands frequent reaching may not require frequent overhead reaching, and the Ninth Circuit has identified the DOT job of cashier as one such job. Gutierrez, 844 F. 3d at 808 ("While 'reaching' connotes the ability to extend one's hands and arms in any direction, not every job that involves reaching requires the ability to reach overhead. Cashiering is a good example.") (internal quotation marks omitted); see Ballesteros v. Colvin, 2016 WL 3381280 at *15 (C.D. Cal. June 13, 2016) ("But just because the term 'reaching' includes extending the arms in 'any' direction – such as up, down, out, right and left, – that does not mean that a job that involves reaching necessarily requires extending the arms in all of those directions."). Gutierrez held that a claimant could perform her work as cashier despite her inability to reach above shoulder level with the dominant hand because there was no apparent or obvious conflict between the VE's testimony and a general requirement for frequent reaching. Gutierrez, 844 F. 3d at 808. The court used both the DOT job description and common knowledge to inform its understanding of a cashier's duties, and it concluded that the typical cashier did not need to reach overhead frequently. Gutierrez, 844 F. 3d at 808 ("[A]n ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances . . . [¶] Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT].").

Similarly, the frequent reaching requirement of the other two DOT jobs identified by the ALJ did not manifest an obvious or apparent conflict with plaintiff's RFC. Just as it is not apparent or obvious that a cashier needs to reach overhead frequently, it is not obvious or apparent that a storage facility clerk needs to reach overhead frequently. A storage facility clerk is a largely administrative position that consists of "leas[ing] space to customers of rental storage facility: Inform[ing] customers of space availability, rental regulations, and rates. Assist[ing] customers in section of storage unit size. . . . Record[ing] terms of rental on rental agreement form . . . . Comput[ing] rental fee and collect[ing] payment. . . ." [DOT code 295.367-026]. Similarly, it is not obvious or apparent that an office helper, whose primary duties include taking and distributing messages, files and paperwork, would need to reach overhead frequently. [See DOT code 239.567-010]. If, however, any of these positions happened to include an element of overheard reaching, such as retrieving items from higher shelves, plaintiff's reaching restriction extends only to the right upper extremity. In such cases, plaintiff could use the left upper extremity. Without an apparent or obvious

1 conflict, the ALJ did not err in failing to obtain additional clarification from the VE or in relying on the VE's testimony.

Plaintiff also challenges the VE's testimony that he could work as a storage facility clerk notwithstanding a restriction in his RFC against jobs requiring hypervigilance. Plaintiff contends that because the storage facility clerk may involve "using security camera[s] . . . [l]oad[ing] film into security and surveillance cameras, record[ing] dates of film changes, and monitor[ing] camera operations to ensure performance as required," the restriction against hypervigilance precludes him from working as a storage facility clerk. [JS 9]. This contention is meritless. The DOT description of storage facility clerk does not include security camera surveillance, but rather security camera maintenance. [DOT code 295.367-026]. That is, a storage facility clerk might be required to check to make sure the security camera is functioning properly but would not perform the actual surveillance. There is no conflict, actual or apparent, between the storage facility job and the limitation against jobs requiring hypervigilance.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

February 15, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge